ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| EL PUEBLO DE PUERTO RICO<br><br>Apelado<br><br>v.<br><br>LUIS LAGUER MARTÍNEZ<br><br>Apelante | KLAN202400303 | *Apelación* procedente del Tribunal de Primera Instancia, Sala de Aguadilla<br><br>Criminal Núm.<br>A SC2023G0278<br>A SC2023G0279<br><br>Sobre:<br>Art. 401 A.2 Ley 4 Grave (1971); Art. 412 Ley 4 Grave (1971) |

Panel integrado por su presidenta, la Jueza Ortiz Flores, el Juez Rivera Torres, la Juez Rivera Pérez y el Juez Campos Pérez

Campos Pérez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 27 de agosto de 2024.

Comparece el Sr. Luis Laguer Martínez (señor Laguer Martínez) mediante el presente recurso apelativo. Solicita la revocación de la condena decretada por el Tribunal de Primera Instancia, Sala de Aguadilla (TPI), por virtud de dos sentencias condenatorias dictadas el 28 de febrero de 2024. Como consecuencia de la determinación judicial, el apelante fue sentenciado a cumplir concurrentemente sendas penas de veinte (20) y tres (3) años, por la infracción de los Artículos 401 (a) (2) y 412 de la Ley de Sustancias Controladas, *infra*, respectivamente.

**I.**

Por hechos ocurridos el 7 de junio de 2023, alrededor de las 7:40 de la mañana, el Ministerio Público presentó dos acusaciones en contra del señor Laguer Martínez:[1]

**ASC2023G0279:** El referido imputado de delito, LUIS LAGUER MARTÍNEZ, allá en o para el día 7 de junio

---

[1] Apéndice, págs. 1-2.

de 2023, en Aguadilla, que forma parte del Tribunal de Primera Instancia, Sala de Aguadilla, ilegal, voluntaria y criminalmente; POSEÍA CON INTENCIÓN DE DISTRIBUIR la sustancia controlada conocida por COCAÍNA en modalidad de "crack". Sin estar autorizado en ley para ello.

**ASC2023G0278:** El referido imputado de delito, LUIS LAGUER MARTÍNEZ, allá en o para el día 7 de junio de 2023, en Aguadilla, que forma parte del Tribunal de Primera Instancia, Sala de Aguadilla, ilegal, voluntaria y criminalmente; tenía en su posesión parafernalia descrita como dos paquetes de papel color marrón marca Show, que son utensilios usado[s], diseñados o destinados para el empaque, almacenamiento, ingestión, inhalación o introducción en el cuerpo humano de sustancias controladas. Sin estar autorizado en ley para ello. Consistente en que poseía dos paquetes de hojas de papel, color marrón.

El 11 de septiembre de 2023 se dio lectura a las acusaciones. En el juicio en su fondo, celebrado por tribunal de derecho, las partes contendientes estipularon la siguiente evidencia: la cadena de custodia, la prueba de campo, el informe de análisis químico, la hoja de advertencias, el inventario de propiedad ocupada, la orden de arresto federal, la orden de confiscación y el recibo oficial de dinero ocupado.[2]

Fue estipulada también la capacidad del Agte. Carlos Vega Feliciano de la Policía de Puerto Rico (agente Vega Feliciano), quien fungió como testigo del Ministerio Público.[3] Éste ha laborado por 28 años en Operaciones Tácticas y ha diligenciado arrestos, la mayoría vinculados a armas y drogas.[4] Durante el testimonio del agente Vega Feliciano se admitió, sin objeción de la defensa, la siguiente evidencia: el dinero ocupado, más de $500.00 de diferentes denominaciones;[5] una cartera negra de cintura,[6] donde se encontraba el dinero y unas envolturas y hojas *brown*,[7] que "se utilizan para fumar sustancias controladas y para fumar cigarro

---

[2] Véase, Transcripción de la prueba oral de 13 de diciembre de 2023 (TPO), págs. 2 líneas 1-9; 6 líneas 12-19; 7 líneas 19-22; 8 líneas 1-4; además, pág. 10 líneas 13-21.
[3] TPO pág. 13 líneas 7-12.
[4] TPO págs. 61 líneas 15-19; 62 líneas 5-19.
[5] TPO págs. 23 líneas 1-11; 26 líneas 5-7.
[6] TPO págs. 20 líneas 20-22; 21 líneas 14-17; 23 líneas 12-17.
[7] TPO pág. 19 líneas 16-19.

[u] otras cosas más";[8] un envase cilíndrico rojo,[9] que contenía "un sinnúmero de bolsas de tonalidad amarilla [...] piedra granulada de, por mi experiencia era "Crack";[10] y fotografías de la prueba ocupada:[11] "Pues, dinero, en diferentes este, denominaciones, menudo, se le ocupó el envase y están las bolsitas en tonalidad amarilla, y es como en blanco y negro la cartera que se le ocupó y los dos sobres; unas llaves y los cigarrillos".[12] También se le ocupó un teléfono celular.[13]

En síntesis, el agente Vega Feliciano, quien identificó al apelante en sala,[14] testificó que, el 7 de junio de 2023, recibió instrucciones del Tnte. Omar Rosa para diligenciar una orden de arresto federal en contra del señor Laguer Martínez.[15] Había acudido al archivo federal, donde constaban retratos y la descripción.[16] Al dirigirse junto con la Agte. Karen Malavé, en un vehículo no rotulado, de civil y con su identificación,[17] a los predios de la escuela cerrada José de Diego en Aguadilla,[18] divisó al señor Laguer Martínez, al cual había visto el día antes. "[U]na persona como de cinco, cuatro, con una 'T Shirt' negr[a] con un pantalón mahón hasta la rodilla, azul, y yo lo veo y...".[19] Declaró que el señor Laguer Martínez entró a la escuela a través de una

---

[8] TPO pág. 20 líneas 11-12.
[9] TPO pág. 24 líneas 4-22.
[10] TPO pág. 18 líneas 17-19, según modificada por la *Moción informativa y sobre objeciones a la transcripción de prueba oral* presentada por el Pueblo de Puerto Rico el 3 de junio de 2024.
[11] TPO pág. 29 líneas 17-22.
[12] TPO pág. 29 líneas 13-16.
[13] TPO pág. 28 líneas 19-22.
[14] TPO págs. 16 líneas 16-21; 17 líneas 1-2.
[15] TPO págs. 13 líneas 17-21; 14 líneas 1-20. Surge del sistema electrónico federal, del cual tomamos conocimiento judicial, que en el caso 14-cr-00391 (PAD-5) contra el señor Laguer Martínez, por conspiración y posesión con intención de distribuir cocaína, *crack* y marihuana, el oficial de probatoria Alexander Galindo presentó el 9 de mayo de 2023 una segunda moción para notificar las violaciones a la libertad supervisada que extinguía el apelante (entrada 2173). Luego de varios trámites, el 11 de mayo de 2023, se expidió la orden de arresto en su contra (entrada 2176).
[16] TPO pág. 33 líneas 3-14.
[17] TPO págs. 15 líneas 13-15; 17 líneas 16-21; 18 líneas 1-4.
[18] TPO pág. 35 líneas 1-18.
[19] TPO pág. 16 líneas 7-15.

verja rota.[20] A continuación, reproducimos parte del testimonio del agente Vega Feliciano, al que hemos impartido énfasis.

> R. Entonces en ese momento yo paso, voy al interior de la escuela y voy caminando y entonces al final de la escuela hay un edificio en este lado, hay un edificio acá y está el baño en el medio. Pues yo voy por entremedio, cuando yo lo observo él estaba sentado y **yo observo que él tiene un, un, un envase cilíndrico rojo y en el otro lado tenía el celular**. Cuando de momento él mira, él me ve se levanta; yo le mando a dar el alto y él viene y se pega al, al, entremedio del salón y tira. **Yo veo que él tira el envase pa'llá, pa' encima del, de los baños** y entonces yo le digo a él que se siente. El viene baja y yo le digo siéntate ahí. En esos momentos viene el compañero Lacourt que venía detrás de mí; yo estaba solo; y yo le digo este, mantente en la custodia de él que voy a verificar algo. Entonces lo mantiene en la custodia, yo paso a entonces a, hay unos tubos, unos pasamanos en el baño y **yo me trepo y efectivamente, estaba encima de, lo único que había allí eran piedras, cantos de piedras y lo único y el, y el envase que había arrojado**. Yo lo ocupo, bajo y verifico y veo un **sinnúmero de bolsas de tonalidad amarilla con, por mi experiencia, piedra granulada, por mi experiencia era "Crack"**. Pues yo lo tapo, bajo y lo pongo bajo arresto. **Le ocupo la cartera que la tenía en la, en la, cintura**. Al verificar dentro de, de la, de la cintura.[21]
>
> .      .      .      .      .      .      .      .      .
>
> R. Para, para, por lo menos esto no estaba en la cartera, esto fue lo que yo le ocupé encima. Que está el envase que, el envase que yo encontré encima de la, de la, del baño. Cuando yo le ocupo, para seguridad de él y la mía. **Yo verifico la misma en su interior y ahí es que yo veo un sin, tenía dine, tenía bastante dinero ahí en diferentes dominaciones** [*sic*] **y al mismo tiempo conseguí estas, estas envolturas y tenía u, unas hojas como "Brown" adentro; que se utiliza mayormente para fumar**.[22]
>
> .      .      .      .      .      .      .      .      .
>
> R. Este tipo de, de, de, de papel se utilizan para fumar sustancias controladas y para fumar cigarro [u] otras cosas más.[23]
>
> .      .      .      .      .      .      .      .      .
>
> R. Es una cartera negra como aquella que está ahí. Una cartera negra y la tenía en la cintura puesta.[24]
>
> .      .      .      .      .      .      .      .      .

---

[20] TPO pág. 17 5-8. El agente Vega Santiago declaró que el apelante iba acompañado por otros dos individuos que se fueron del lugar. Uno de ellos puso un bulto en el interior de la escuela. El testigo revisó el bulto abandonado, pero éste no tenía nada en el interior. TPO pág. 17 líneas 5-13.

[21] TPO pág. 18 líneas 5-21.

[22] TPO pág. 19 líneas 14-19.

[23] TPO pág. 20 líneas 11-12.

[24] TPO pág. 20 líneas 20-22.

R. Pues como le dije, cuando recibí este unos sobres verde[s] y "Brown" y en su interior habían [*sic*] unos papeles que se utilizan para fumar sustancias controladas y también se utilizan para fumar este, otro tipo de, de...[25]

.     .     .     .     .     .     .     .

P. Agente, usted, usted dijo que lo observó con un en[v]a[s]e en sus manos [...] y que el mismo, nuevamente, usted solicitó que un agente custodiara al imputado en lo que usted iba?

R. A lo que yo me trepé por los tubos de pasamanos y miré hacia la parte arriba donde él había arrojado y ahí encontré el envase.

P. ¿Y cómo usted sabe que el envase que usted ve ha de ser el mismo?

R. Porque no había más ninguno y yo cuando lo arrojó.

P. De usted observar ese envase nuevamente, ¿lo podría reconocer?

R. Claro que sí. Es el mismo envase que se le ocupó que son de dulces "M" y "M". Aquí, de color rojo, que la tapa es roja. Esto yo lo embalé y lo puse aquí mismo.[26]

.     .     .     .     .     .     .     .

P. Una vez lo arresta que procede a hacer con el imputado.

R. Se fue transportado, fue transportado a la unidad del "Strike Force" donde se contabilizó la sustancia co, este, controlada. **Se verificó y eran diecisiete bolistas plásticas transparentes tonalidad color amarilla. En su interior, este, piedra granulada de aparente "Crack"**.

P. ¿Qué se hizo con esa sustancia?

R. Esa sustancia, tan pronto **se contabilizó el dinero, que fueron quinientos tres, quinientos cuarenta y pico de dólares**; fue contabilizado todo se hizo un recibo relacionado a todo esto y después, tan pronto se terminó se le leyeron las advertencias de ley en el lugar. De ahí fue transportado a drogas en Aguadilla donde el agente en turno le **realizó la prueba de campo arrojando positivo a cocaína**.

P. Esa prueba de campo, ¿en presencia de quién se realizó?

R. A presencia d'el [*sic*].[27]

.     .     .     .     .     .     .     .

P. ¿Qué fue lo que se le, a qué se le hizo la prueba de campo? Cuénteme.

---

[25] TPO pág. 22 líneas 1-3.
[26] TPO págs. 23 línea 20; 24 1-16.
[27] TPO págs. 25 líneas 18-22; 26 líneas 1-14.

R. Se le hizo a, a la sustancia controlada.

P. ¿Cuáles?

R. Ese, al, a las bolsitas a las **diecisiete bolsitas plásticas de tonalidad amarilla. Con piedra**...

P. ¿Y cuál fue el resultado de lo mismo?

R. **Positivo**.[28]

Ponderada la totalidad de la evidencia, el TPI emitió sendos fallos de culpabilidad contra el señor Laguer Martínez, por la infracción del Artículo 401 (a) (2) y el Artículo 412 de la Ley de Sustancias Controladas, *infra*.[29] Luego de observados los trámites de rigor, el 28 de febrero de 2024, el apelante fue sentenciado a extinguir las siguientes penas: (1) ASC2023G0278 – veinte (20) años de cárcel;[30] y (2) ASC2023G0279 – tres (3) años de reclusión.[31] Ambas sanciones penales se cumplirían de manera concurrente entre sí y de forma consecutiva con cualquier otra pena impuesta. Además, se le condenó al pago de $300.00 por virtud del Artículo 61 del Código Penal de 2012.[32]

Inconforme, el 1 de abril de 2024, el señor Laguer Martínez, acudió ante nos con un *Escrito de Apelación* y esbozó los siguientes señalamientos de error:

> **PRIMER ERROR:** Erró el Tribunal de [Primera] Instancia, al encontrar al apelante culpable sin que el Ministerio Público presentara prueba más allá de duda razonable para encontrar culpable al apelante de los delitos imputados.

> **SEGUNDO ERROR:** Erró el Tribunal [de Primera Instancia], al encontrar al apelante culpable por [la] violación al Artículo 412 de la *Ley de Sustancias Controladas* sin evidencia que sustente dicha decisión.

---

[28] TPO pág. 27 líneas 8-19.
[29] TPO pág. 78 líneas 7-12.
[30] Apéndice, pág. 3.
[31] Apéndice, pág. 4.
[32] El Artículo 61 del Código Penal, *Pena especial*, dispone: "Además de la pena que se impone por la comisión de un delito, el tribunal impondrá a todo convicto una pena especial equivalente a cien (100) dólares, por cada delito menos grave y trescientos (300) dólares por cada delito grave. La pena aquí dispuesta se pagará mediante los correspondientes comprobantes de rentas internas. Las cantidades así recaudadas ingresarán al Fondo Especial de Compensación a Víctimas de Delito. Esta penalidad se fijará según se dispone en la *Ley para la imposición de la Pena Especial del Código Penal de Puerto Rico*". 33 LPRA sec. 5094.

Con el beneficio de la comparecencia del Pueblo de Puerto Rico, por conducto de la Oficina del Procurador General, y la transcripción de la prueba oral, en la que acogimos las objeciones de la parte apelada,[33] estamos en posición de resolver.

**II.**

**A.**

La presunción de inocencia es un derecho de entronque constitucional, por virtud de la Carta de Derechos de la Constitución de Puerto Rico, la cual expresamente dispone que "[e]n todos los procesos criminales, el acusado disfrutará del derecho [...] a gozar de la presunción de inocencia". Art. II, Sec. 11, Const. PR, LPRA, Tomo 1. Entiéndase, la presunción de inocencia es un derecho fundamental que le asiste a toda persona acusada de delito en nuestro ordenamiento jurídico. *Pueblo v. Santiago et al.*, 176 DPR 133, 142 (2009). Debido a la transcendencia de este derecho, el Estado tiene la obligación de presentar evidencia suficiente sobre todos los elementos del delito y su conexión con el acusado a fin de establecer la culpabilidad de éste más allá de duda razonable. *Pueblo v. Negrón Ramírez*, 2024 TSPR 41, págs. 12-13, 213 DPR __ (2024) y la jurisprudencia allí citada; además, Regla 110 (f) de Evidencia, 32 LPRA Ap. VI ("[...] En los casos criminales, la culpabilidad de la persona acusada debe ser establecida más allá de duda razonable").

En armonía, la Regla 110 de Procedimiento Criminal, 34 LPRA Ap. II, establece que "[e]n todo proceso criminal, se presumirá inocente al acusado mientras no se probare lo contrario, y en todo caso de existir duda razonable acerca de su culpabilidad, se le absolverá". Por lo tanto, para controvertir dicha presunción, se le exige al Estado un *quantum* de prueba de más allá de duda

---

[33] Conforme con la *Moción informativa y sobre objeciones a la transcripción de prueba oral* del Pueblo de Puerto Rico, presentada el 3 de junio de 2024.

razonable durante la etapa del juicio. *Pueblo v. Santiago et al.*, *supra*, pág. 142. En ese sentido, la prueba que justifique una condena tiene que ser satisfactoria, de modo que "**produzca la certeza o convicción moral en una conciencia exenta de preocupación o en un ánimo no prevenido**". (Énfasis nuestro). *Pueblo v. Acevedo Estrada*, 150 DPR 84, 100 (2000). Si la prueba del Estado produce insatisfacción en el ánimo del juzgador, entonces, estamos ante una duda razonable y fundada. *Pueblo v. Cabán Torres*, 117 DPR 645, 652 (1986). Por consiguiente, de ello ocurrir, "prevalece la presunción de inocencia y procede la absolución del acusado o la acusada". *Pueblo v. Centeno*, 208 DPR 1, 37 (2021).

En cuanto a la prueba capaz de derrotar la presunción de inocencia, el Tribunal Supremo ha opinado:

> La prueba así presentada, sin embargo, no supone la necesidad u obligación de probar la comisión del delito con certeza matemática. Lo que se exige, como imperativo constitucional, es "prueba satisfactoria y suficiente en derecho [...] que produzca certeza o convicción moral en una conciencia exenta de preocupación o en un ánimo no prevenido". Así pues, para derrotar la presunción de inocencia y probar la comisión de un delito más allá de duda razonable, no se requiere que toda duda posible tenga que ser destruida, sino que se derrote la duda razonable, la que vendría siendo aquella duda fundada en el raciocinio de todos los elementos de juicio envueltos en el caso y que no constituye una duda especulativa o imaginaria. (Citas y énfasis en el original suprimidos). *Pueblo v. Negrón Ramírez, supra*, pág. 13.

Así, pues, la determinación acerca de si se satisfizo o no el estándar probatorio de más allá de duda razonable corresponde al juzgador de hechos, quien vendrá llamado a evaluar y aquilatar la evidencia presentada ante sí para determinar cuáles hechos han quedado probados o establecidos, con sujeción a los principios consignados en la Regla 110 de Evidencia, *supra*. Claro está, es norma asentada que la apreciación que hace el juzgador de la evidencia desfilada durante un juicio criminal y la eventual

determinación de culpabilidad son una cuestión mixta de hecho y de derecho que es revisable en apelación por un tribunal de mayor jerarquía. *Pueblo v. Negrón Ramírez, supra*, pág. 15, que cita a *Pueblo v. Cabán Torres, supra*, pág. 653; *Pueblo v. Pagán Díaz*, 111 DPR 608, 621 (1981); *Pueblo v. Serrano Nieves*, 93 DPR 56, 60 (1966). Ahora bien, **en nuestro ordenamiento jurídico impera una norma general de deferencia a la apreciación de la prueba y las determinaciones de hechos que realiza el foro juzgador**, y sólo reconoce contadas excepciones en las que un tribunal apelativo podrá intervenir con éstas y sustituir el criterio del foro primario por el suyo. *Pueblo v. Negrón Ramírez, supra*, pág. 15; *Pueblo v. Rivera Montalvo*, 205 DPR 352, 373 (2020); *Pueblo v. Santiago et al.*, 176 DPR 133, 144-148 (2009); *Pueblo v. Irizarry*, 156 DPR 780, 815 (2002). La deferencia hacia las determinaciones que realizan los juzgadores de primera instancia en cuanto a la prueba testifical (oral) que se presenta ante ellos emana del hecho de que son éstos los que se encuentran en una mejor posición para evaluar, aquilatar y adjudicar la prueba presentada ante ellos. *Pueblo v. Negrón Ramírez, supra*, págs. 16-17 y la jurisprudencia citada. "Después de todo, son los juzgadores de hechos los que pueden oír y apreciar la forma de declarar de los testigos, así como su comportamiento". *Id.*, pág. 17; *Pueblo v. Toro Martínez*, supra, pág. 858; Pueblo v. García Colón I, supra, pág. 165; Pueblo v. Maisonave Rodríguez, supra, págs. 62-63.

**B.**

En su parte pertinente, el Artículo 401 de la Ley 4 de 23 de junio de 1971, según enmendada, *Ley de Sustancias Controladas de Puerto Rico*, 24 LPRA sec. 2101 *et seq.*, establece lo siguiente:

Artículo 401. — *Actos prohibidos (A) y penalidades.*

(a) Excepto en la forma autorizada en este capítulo, será ilegal el que cualquier persona, a sabiendas o intencionalmente:

.      .      .      .      .      .      .      .

(2) Produzca, distribuya o dispense, transporte u oculte o **posea con la intención de distribuir** o dispensar, trasportar u ocultar una sustancia falsificada.

.      .      .      .      .      .      .      .

(b) Excepto lo establecido por la sec. 2405 de este título toda persona que viole lo dispuesto por el inciso (a) de esta sección, convicta que fuere, será sentenciada en la forma siguiente:

(1)(A) En el caso de alguna sustancia controlada incluida en las Clasificaciones I o II, que sean drogas narcóticas, incurrirá en **delito grave y, convicta que fuere, será sentenciada con pena de reclusión por un término fijo de veinte (20) años**. [...] (Énfasis nuestro). 24 LPRA sec. 2401.

Según se desprende de la disposición legal, el Artículo 401 de la Ley de Sustancias Controladas tipifica como delito la posesión de sustancias controladas con la intención específica de distribuirlas. El delito apareja con una pena de veinte (20) años cuando la sustancia controlada está incluida en las Clasificaciones I o II.[34] En esta modalidad, "[b]asta la posesión de la sustancia controlada con la intención específica de ejecutar alguna de las acciones prohibidas para que se configure el delito". A. Bermúdez Torres, *Delitos especiales en Puerto Rico*, ed. rev., LexJuris de Puerto Rico, 2023, pág. 198. Es decir, además de la posesión de la sustancia controlada, se precisa establecer la intención específica, a propósito o con conocimiento, de llevar a cabo la conducta proscrita. *Id.* "Para esto, se permite hacer inferencias y deducciones razonables de las circunstancias relacionadas con los hechos, la capacidad mental, las manifestaciones o la conducta de la persona acusada". Secretariado de la Conferencia Judicial y Notarial, *Libro de instrucciones al jurado*, marzo 2021, pág. 430. Tales circunstancias pueden ser, por ejemplo, la cantidad, lugar y tipo de sustancia ocupada, la cuantía del dinero en efectivo y sus denominaciones, la presencia de parafernalia.

---

[34] Refiérase al Artículo 202 de la Ley de Sustancias Controladas, 24 LPRA sec. 2202.

De otro lado, el Artículo 412 de la Ley de Sustancias Controladas dispone, en parte, como sigue:

*Artículo 412. — Parafernalia relacionada con sustancias controladas; definición; criterios; penas.*

(a) *Parafernalia.*— Parafernalia **relacionada con sustancias controladas**, comprende cualquier utensilio, objeto, artículo, equipo, **producto** o material de cualquier clase que es usado, **diseñado o destinado a** la siembra, propagación, cultivo, cosecha, manufactura, fabricación, mezcla o combinación, conversión, producción, procesamiento, preparación, prueba, análisis, **empaque**, reempaque, almacenamiento, conservación, ocultación o en la ingestión, **inhalación o introducción en el cuerpo humano** por cualquier otro medio, **de una sustancia controlada** en violación de este capítulo. Incluye, pero no está limitado a lo siguiente:

.    .    .    .    .    .    .    .

(9) Cápsulas, balones o redomas, sobres, **bolsas plásticas** o de papel celofán y otros envases usados, **destinados o diseñados para utilizarse en el empaque de pequeñas cantidades de sustancias controladas**.

.    .    .    .    .    .    .    .

(12**) Objetos usados, destinados o diseñados para ser utilizados en la ingestión, inhalación, o la introducción en el cuerpo humano** por cualquier otro medio de marihuana, **cocaína**, hashish o aceite de hashish, como son:

.    .    .    .    .    .    .    .

(I) Papel para envolver picadura, conocido como "**papel para enrolar**" o papel conocido como "bambú".

(b) *Criterios.*— En la determinación de lo que constituye un artículo, objeto o utensilio relacionado con la parafernalia de sustancias controladas, un tribunal, o cualquier otra autoridad competente, podrá considerar, en adición a otros factores relevantes, los siguientes:

(1) Declaraciones del dueño o de la persona en control del objeto relacionadas con su uso.

(2) **Convicciones** [*sic*] **anteriores**, si alguna, del dueño o de **la persona que tiene el control del objeto**, bajo cualquier **ley federal o estatal relacionada con sustancias controladas**.

(3) La **proximidad o relación del objeto, en tiempo y espacio**, con una violación de esta ley.

(4) La **proximidad del objeto a sustancias controladas**.

(5) La existencia de algún residuo de sustancias controladas en el objeto.

(6) Evidencia directa o circunstancial del propósito del dueño o de la persona en control del objeto, de entregarlo a personas que sabe[n] o podrían razonablemente saber que intentan usarlo para facilitar una violación de esta ley.

.    .    .    .    .    .    .    .

(12) La existencia y **posibilidad de usos lícitos para el objeto en la comunidad**.

.    .    .    .    .    .    .    .

Toda persona que viole lo dispuesto en este inciso será culpable de **delito grave** y convicta que fuere será sentenciada con multa no mayor de treinta mil dólares ($30,000) o **pena de reclusión por un término fijo de tres (3) años**. [...] (Énfasis nuestro). 24 LPRA sec. 2411b.

El concepto de parafernalia está relacionado con sustancias controladas. Entre otros, comprende la posesión de cualquier objeto diseñado o destinado para el empaque, así como para la inhalación o introducción en el cuerpo humano de una sustancia controlada. Bermúdez Torres, *op. cit.*, pág. 225. Al arribar a una conclusión en la que se configure el delito, "se permite hacer inferencias y deducciones de las circunstancias relacionadas con los hechos, la capacidad mental, las manifestaciones o la conducta de la persona". Secretariado, *op. cit.*, pág. 459.

### III.

En la presente causa, el señor Laguer Martínez señala que el TPI incidió al declararlo culpable de la posesión de sustancias controladas con intención de distribuirlas, sin que el Ministerio Público presentara evidencia más allá de duda razonable. Alega también que no existe evidencia que sustente la condena por la posesión de parafernalia.

En su argumentación, el apelante aduce que, en su testimonio, el agente Vega Feliciano no lo vio haciendo nada ilegal y que su arresto obedeció a una orden federal a esos efectos.[35] Añade que el declarante sólo vio por unos segundos que el

---

[35] TPO pág. 50.

apelante poseyera el envase rojo en la mano.[36] Indica que el testigo tampoco observó que el señor Laguer Martínez viera el contenido del envase rojo, por lo que infiere que el testigo no tenía certeza del conocimiento del apelante sobre la sustancia controlada.[37] Razona, pues, que no se desfiló prueba de la intención específica que exige el Artículo 401 de la Ley de Sustancias Controladas, *supra.*

Con relación al Artículo 412 de la Ley de Sustancias Controladas, *supra,* el señor Laguer Martínez sostiene que la parafernalia ocupada es un artículo de venta en comercios. Arguye que no se ocupó ninguna sustancia que pudiese utilizarse con los papeles para enrolar.

Por la relación entre ambos señalamientos de error, los discutiremos en conjunto.

El Artículo 401 de la Ley de Sustancias Controladas, *supra,* dispone como elementos del delito: (1) la posesión a sabiendas (2) de sustancias controladas (3) con la intención específica de distribuirlas. Por igual, los elementos del delito tipificado en el Artículo 412 del estatuto establecen: (1) la posesión (2) de parafernalia relacionada con sustancias controladas. En torno a la suficiencia de la prueba, es sabido que "[c]ualquier hecho en controversia es susceptible de ser demostrado mediante evidencia directa o mediante evidencia indirecta o circunstancial. *Evidencia directa* es aquélla que prueba el hecho en controversia sin que medie inferencia o presunción alguna y que, de ser cierta, demuestra el hecho de modo concluyente. *Evidencia indirecta o circunstancial* es aquélla que tiende a demostrar el hecho en controversia probando otro distinto, del cual por si o, en unión a otros hechos ya establecidos, puede razonablemente inferirse el hecho en controversia". Regla 110 (h) de Evidencia, 32 LPRA

---

[36] TPO págs. 65 líneas 18-20; 66 líneas 1-7.
[37] TPO págs. 67 líneas 18-21; 68 líneas 1-2.

Ap. VI, R. 110 (h). Según esbozamos, al justipreciar el delito tipificado y los actos delictivos imputados, en ambos casos, es permisible hacer inferencias y deducciones razonables de las circunstancias fácticas, la capacidad mental y la conducta del acusado.

A base de lo anterior, en el caso de autos, los hechos probados y creídos por el TPI versan sobre la encomienda de un agente del orden público estatal para diligenciar una orden de arresto federal en contra del señor Laguer Martínez, quien fue identificado afirmativamente por el agente Vega Feliciano. Allá para la mañana de 7 de junio de 2023, en una escuela cerrada y en estado de abandono, el apelante traspasó los predios del lugar de los hechos delictivos por una verja rota. Si bien, el señor Laguer Martínez inicialmente caminaba acompañado por otros dos sujetos, éstos abandonaron el lugar, por lo que entró solo al plantel escolar, seguido por el testigo del Ministerio Público. Allí, el declarante atestiguó reiteradamente que vio al apelante sentado, con un envase rojo en la mano, el cual el señor Laguer Martínez lanzó al techo de los baños aledaños, en cuanto se percató de la presencia del agente Vega Feliciano, quien ya le había dado el alto. "[...] [L]e digo que no se mueva, entonces ahí es que le doy el alto... [...] [c]uando él la arroja".[38] A preguntas de la representación legal del apelante, el agente Vega Feliciano aseveró que vio dónde había caído el envase rojo: "Sí, en el techo".[39] Una vez fue puesto bajo arresto, el agente Lacourt permaneció custodiando al apelante, mientras el testigo recuperaba el objeto lanzado. "Y no había nada más allá arriba en el techo, mas que ese envase".[40] Ciertamente, al apreciar la conducta del apelante al lanzar el envase a un lugar de difícil acceso, es deducible que el señor Laguer Martínez conocía el

---

[38] TPO pág. 49 líneas 1-7.
[39] TPO pág. 56 líneas 5-16.
[40] TPO pág. 57 líneas 20-21.

contenido ilegal del envase ocupado. "Bueno sí. Él conocía lo que había dentro del pote, porque si no fuera sustancia y lo tenía en la mano, ¿por qué lo tiró?"— dijo el agente Vega Feliciano cuando se le preguntó si tenía certeza de que el apelante sabía del contenido del envase ocupado.[41]

Al registrar al apelante, el agente Vega Feliciano le ocupó una cartera de cintura, la cual contenía, entre otras cosas, dinero en efectivo de distintas denominaciones y unos paquetes de hojas de papel marrón. El testigo declaró que la suma dineraria sobrepasaba los $500.00. Con relación a las hojas "para enrolar",[42] declaró que "se utilizan para fumar sustancias controladas y para fumar cigarro[s] [u] otras cosas más".[43]

Según reseñamos, de conformidad con la prueba estipulada y admitida, sin objeción de la defensa, el envase rojo de plástico en la mano del apelante y que éste lanzó a un techo cercano tenía en su interior diecisiete (17) bolistas plásticas transparentes de tonalidad amarilla, las cuales contenían piedra granulada (*crack*) que arrojaron un resultado positivo a cocaína. La cantidad significativa de droga, los empaques individuales, a lo que se suma la incautación de más de $500.00 en diferentes denominaciones, abona al cúmulo de prueba directa y circunstancial, la cual demuestra, más allá de duda razonable, que el apelante poseía, con conocimiento, una sustancia controlada, con la específica intención criminal de distribuirla, tal cual exige el Artículo 401 (a) (2) de la Ley de Sustancias Controladas, *supra*. La infracción penal estatuye una pena carcelaria de veinte (20) años; idéntica a la condena impuesta por el TPI.

En cuanto a la parafernalia ocupada, es medular mencionar que, en el turno de contrainterrogatorio, la defensa no cuestionó

---

[41] TPO pág. 70 líneas 15-20.
[42] TPO pág. 22 línea 9.
[43] TPO pág. 20 líneas 9-12; además, págs. 19 línea 19; 22 líneas 1-3.

nada en torno a la evidencia ocupada en la cartera de cintura: el dinero y los dos paquetes de hojas. Es decir, el apelante no nos ha puesto en posición para intervenir con la apreciación que realizó el juzgador sobre la credibilidad conferida al agente Vega Feliciano al éste atestiguar que esas hojas no se limitan para fumar cigarros de tabaco o marihuana, por lo que la posibilidad de un uso lícito, en este caso, queda descartado. Por ende, no procede cuestionar la credibilidad de la prueba testifical desfilada, toda vez que ésta es susceptible de ser creída por una persona razonable y de conciencia no prevenida. Véase, *Pueblo v. Colón, Castillo*, 140 DPR 564, 582 (1996). Como se conoce, sólo procedería interponerse con el juicio del TPI si éste hubiera actuado movido por la pasión, el prejuicio, la parcialidad o por haber incurrido en un error manifiesto en su adjudicación. *Pueblo v. Toro Martínez*, 200 DPR 834, 858 (2018).

Apuntamos que, además del material delictivo ocupado en el caso de epígrafe —drogas, dinero y parafernalia— el cual fue fotografiado e inventariado y admitido sin objeción, el testimonio del agente Vega Feliciano se fundamentó en otras piezas de evidencia estipulada, tales como, la cadena de custodia, la prueba de campo, el informe de análisis químico y el recibo de dinero. Estimamos que la teoría que el apelante pretende elucubrar en esta etapa no encuentra apoyo en la prueba que el TPI tuvo ante sí. Decididamente, las hojas están relacionadas con la sustancia controlada ocupada en el mismo lugar y tiempo; esto es, la relación y la proximidad de las hojas con la droga quedó establecida, así como las condenas anteriores por delitos similares,[44] criterios estatuidos al evaluar el delito. En conclusión, opinamos que, conforme con la totalidad de las circunstancias relacionadas con

---

[44] El apelante hizo alegación de culpabilidad el 28 de enero de 2020 en el caso estatal ASC2019G0246, sobre sustancias controladas.

los hechos, el TPI no erró al adjudicar la comisión por parte del señor Laguer Martínez del delito estatuido en el Artículo 412 de la Ley de Sustancias Controladas, *supra*. El delito apareja con una sanción penal de tres (3) años. La misma que resultó en la pena sentenciada.

En suma, al ejercer nuestra función revisora, tras un examen sereno e imparcial de la prueba testifical desfilada por el Ministerio Público, determinamos que ambas *Sentencias* apeladas están sustentadas por prueba suficiente y satisfactoria para concluir, más allá de duda razonable, que el apelante infringió todos los elementos del Artículo 401 (a) (2) y del Artículo 412, ambos de la Ley de Sustancias Controladas, *supra*, así como la conexión ineludible de éstos con el señor Laguer Martínez.

## IV.

Por los fundamentos expuestos, confirmamos la *Sentencia* apelada.

Lo acordó el Tribunal, y lo certifica la secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones